Good morning. May it please the Court, I'm James Laughlin and I represent the appellant Joel Miller. With the Court's permission, I'd like to reserve two minutes of my time for rebuttal and I'll keep an eye on my time. This case presents two issues challenging Mr. Miller's conviction for knowingly possessing an AK-47 machine gun. This morning I'd like to focus on the first issue. Mr. Miller's defense was that his wife, Melissa, and ex-friend, Christopher Bruce, were having an affair and they framed him because he threatened to report Mr. Bruce, a fellow Marine, for the military crime of adultery. The existence of the affair and the threat were central parts of the defense. Mr. Miller testified about these facts, but because they were so important, it was crucial for him to have independent corroborating evidence for supporting his own testimony. He therefore subpoenaed Melissa Miller and Christopher Bruce to confirm that they were having an affair and to confirm that Mr. Miller threatened to report Mr. Bruce for adultery. Now, he also called them, he wanted to ask them other, about other issues that would have been covered by their Fifth Amendment privileges, and that relates to the second issue, but there's no dispute that the questions about their affair would not have implicated a Fifth Amendment privilege. Nevertheless... That's true even for Mr. Bruce, and he was still in the Marines at that time. Is that correct? Actually, the record's unclear. As I pointed out in the reply, in the opening brief, and the government never contested that there was no Fifth Amendment privilege, but as I pointed out in the opening brief, it's unclear, A, whether Mr. Bruce was still in the military, B, whether, given the time that had passed, he could still be prosecuted, and C, even whether that form of adultery is still a crime in the current military or the 2012 military. So, as I said, the government has never contested that there was a Fifth Amendment privilege for either witness with regard to the affair testimony. Nevertheless, the government asked the district court, and the district court granted the request to preclude the evidence on the ground that it was supposed, asking about these questions would supposedly be impeachment, which is clearly incorrect. Mr. Miller... And yet the government was not using their evidence to convict him. So why isn't it just impeaching prospective testimony that would never be given? Well, Your Honor, I disagree with the premise that if the government gets to pick and choose what aspects of the story that it wants to present, and if it makes a tactical decision, which it clearly did here, because Melissa Miller and Christopher Bruce had a lot of problems. They said, we don't want to use them, and that's what Your Honor said is exactly the decisions they took. Because we're not calling them, they're irrelevant. But it's not irrelevant to Mr. Miller's defense, which he has a constitutional right to present. The government wants to start the story at the moment the officers go to his former house and picks up the guns, and his ex-mother-in-law says, these belong to Mr. Miller. There's a whole story before that that's relevant to how things got to that point. And the defense was that Mrs. Miller and Mr. Bruce framed Mr. Miller. So your suggestion is that if the police get a phone call saying that X and Y are robbing a store on the corner of Fifth and Mission, and it turns out that the phone call originates from Jack the Ripper, you have a right then to call Jack the Ripper to discuss with him the phone call he made, even though they catch the robbers in the act? Going with Your Honor's analogy, if the fact, if there was very little evidence, if the police showed up and saw the robbery occurring and there was independent evidence, then maybe that wouldn't be relevant. But if the key part of the fact was that that phone call was the impetus for the investigation and the primary evidence of the crime that the person was accused of, then what came before that is relevant. For example, if the police were relying, as the government is here, that, well, the guns were found in his house, it must have been his guns, then what's relevant is how the guns got to that point. Now, as I said, the – his entire defense was that this was not his gun, this was Mr. Bruce's gun. And he – But he didn't deny possessing it. Correct, Your Honor. And the government points out when it says that his case is overwhelming, it only talks about possession of the gun. He – in his own testimony, he admitted at times he possessed a gun. What was he convicted of? Knowing – possessing a gun, knowing that it was a machine gun or knowing that – That piece is separate. Knowing that it's a machine gun, that it's operative and so forth, an automatic weapon. But the physical possession, he doesn't deny. And so how it got to be his physical possession, I'm not sure that's really all that interesting. Well, perhaps I haven't explained it in the briefs enough, so I'd like to do it now. The reason is because his story was – his testimony was that he did possess the gun at times because Mr. Bruce gave them to him to hold. How is that a defense? Your Honor, I'd like to explain that. I'd like to explain it because what he said was because they were his guns, I took the bag, I never really – I looked in the bag, didn't really look at them that closely. So his defense was he never looked at them closely enough to know that it was a machine gun or had the attributes to make a machine gun. Now, so that presents a polar opposite stories from the government in the defense. The government's position was Mr. Miller, a Marine veteran who served in Iraq, brought the gun back from Iraq. It was his gun. He had it for two years. Therefore, he clearly knew that it was a machine gun. Mr. Miller's story was that he – it was not his gun. He took temporary possession. Most of the time it was in a bag he didn't look into. When he did look into the bag, he barely looked into it. And then Mr. – he gave them back to Mr. Bruce. So that's where the defense is, Your Honor. The possession isn't the issue. What's at issue is the knowledge. And whether it was Mr. Bruce's gun or Mr. Miller's gun is key to whether he had the knowledge that this was a machine gun. Now, weren't there witnesses who testified that they saw Mr. Miller holding the gun, showing it off plainly enough in view for him to assess the capability of the gun? There were a few different witnesses, each of whom has different issues. The Lowenbergs testified that Melissa Miller showed them the weapon at a birthday party, and at one point Mr. Miller came in and saw them while they were doing that. Mr. Miller admitted that he was in the room and saw that, but it didn't undercut his testimony that given the events that happened, he still did not take a good enough look at the item to know that it was a machine gun. Keep in mind, this was a chrome-plated AK-47 that looked like it was some kind of display or commemorative piece, not a functioning gun. So the fact that he knew that it was a gun is different from the fact that he knew it was a working machine gun. Now, there's other witnesses, for example, David Peake. Now, David Peake testified that he bought a separate gun from Mr. Miller, and Mr. Miller was acquitted on those counts. But Mr. – I'm sorry, this is Mr. Jones. Mr. Jones also testified that he was at a Thanksgiving where this gun was pulled out, and Mr. Miller showed him, saying, hey, see my AK-47. Now, the fact that the jury rejected his other testimony means that it wasn't that solid in the first place, but also there was an independent witness, Mr. Nava, who was called by the defense, who Mr. Jones says was present, who said that that never happened. So then you have another witness, who is Melissa – Mr. Stultz, who is Melissa Miller's childhood friend. They've known each other for 25 years. She barely – he barely knows Mr. Miller. And the fact that he said that Mr. Miller pulled out the AK-47 is fully consistent with Mr. Miller's story that Melissa Miller and Ms. Christopher Bruce were manufacturing the case, because it was certainly evidence that he – that she had contact with Mr. Stultz before NCIS spoke to him and he became involved in this investigation. So I don't think that the fact that there are other witnesses – I'm sorry, who was Stultz? Stultz was a childhood friend of Melissa Miller. And there was evidence that Melissa Miller had called him, as she did with some of the other witnesses before the NCIS investigators called him, that she was kind of priming the pump, so to speak, to kind of encourage or promote investigation. To create a case? To create a case that Stultz is a witness? Yes. All right. He wasn't involved with the military or anything in terms of – I don't believe he was one of the former Marines. All right. I see that I'm running low on time. May I reserve the remainder of my time, please? You may. Thank you. May it please the Court, Your Honors. Alan Hsu on behalf of the United States. The district court did not err when it precluded the testimony of Melissa Miller and Christopher Bruce. District courts are given wide latitude in making evidentiary rulings. And in this case, it carefully considered each of the topics for proffered by the defense and determined that it was either covered by the Fifth Amendment or that it was improper impeachment. Well, counsel said the Fifth Amendment is dropped out of the case. Is that wrong? That's actually correct, Your Honor. Okay. So focusing – I'll focus my argument on the extramarital affair, Your Honor. Yeah. And so you say it's impeachment. But the standards are that it has to be solely to impeach or it has to be – the primary purpose is actually the case found the government trying to sneak it in the back door. That's correct, Your Honor. So in this case, counsel is arguing, I think with some force, that the purpose of calling them was to bolster his defense, which is that they were having an affair and they had a motive to frame him. And, Your Honor, the issue – That's not impeachment. That's evidence in support of his defense. And, Your Honor, that's – and the government would disagree with that, the reason being the charge in this case was possession of a machine gun. There was no dispute. There was no dispute at trial that the defendant physically possessed a machine gun. No, but he had to know it was a working machine gun. And that's correct, Your Honor. And I've seen the picture. It is a chrome-plated device. And if he did smuggle it from Iraq, it may well have been Saddam Hussein's personal AK-47. That's correct. Not necessarily. Find it on eBay Sam, maybe. But the issue is whether the existence of the affair would have had any bearing on whether – Sure. It speaks to the motivation of the people to encourage their friends to testify adverse to the defendant. And that's – I mean, you didn't present these witnesses on behalf of the government. So characterizing as impeachment puzzles me a little bit. They're not trying to say these witnesses are credible. They're trying to say these witnesses are motivated to frame the defendant. Right. And certainly the law does say that parties do have the right – defendants do have the right to call witnesses. However – They have a right to a defense. They have the right to a defense. That's the primary constitutional question. Correct. And I'll respond to that in two ways. First of all, he did provide a defense. And I do understand the court's concern that he could have called additional corroborating witnesses. But let's just be clear on that, is that defendant took the stand, testified – Counsel, come on. He has the right to a defense, and it's up to the jury to hear witnesses who can shed light on that defense. It's not for the court to use its discretion to say, well, you know, he can stand up and make that statement himself. You and I both know that the jury is not going to take it out of the words of the defendant, who's got a clear motive to make something up. He needs corroboration. That gives it a lot more clout with the jury. Don't you agree? I do agree. But, however, the impeachment of or calling a witness to testify in their case is not an absolute right. Well, we know that, Counsel. But you're saying that the district court carefully waited. But as far as I can tell, the district court didn't look to that component. It was persuaded it was simply to impeach and then gain sympathy or whatever. It's not under our law. It has to be solely for the purpose of impeachment, or it has to be for an ulterior motive where it really isn't relevant and it's really a backdoor way of getting in otherwise inadmissible evidence. And I think what happened there is if you look at the cases that the court cited in making its decision and determining that it was solely for impeachment, it conducted essentially a 403 analysis. And it determined that the information ---- No, it did not. It did not specifically cite 403. But it did say that it would attack collateral issues as to the residents moving up to Washington to go live with Mr. Bruce. So the fact that it was balancing the fact of the probative value, again, of the evidence towards the issue before the jury, again, which was did defendant know that it was a machine gun? The extra marital affair was a collateral issue to be known. Did you ever offer to stipulate that they were having an affair? The problem there was the defense counsel never asked for a stipulation. And there's, I think, a very good reason for that because essentially had the information about the affair been brought into trial and this is why the government did not want it, it could have been a Jerry Springer show. Frankly, it could have been a situation where the affair, the information about the affair, would be a sideshow, a separate trial as to who was ---- Then maybe you should have proposed stipulating to it. And again, I think that the difficulty there was the government did not want to introduce the information to be a sideshow. Why not? If the stipulation wouldn't be a sideshow, so you could have acknowledged the fact and moved on from there, why wouldn't the government be willing to do that? And I can explain that, Your Honor, because the indictment charges the time, again, from 2005 to 2007. At the time defendant possessed and admitted that he possessed the weapon, there was never any allegation of an affair. At the time, and if you may recall from the record, the reason why Mr. Bruce brought the weapons to Mrs. Miller's house was because he was having problems with his own wife. There was ---- This is a different explanation for why you didn't think the affair should come in. You didn't think it was relevant. That doesn't justify keeping it out. That's what juries are supposed to figure out for themselves. Certainly, Your Honor. And in the district court, there was never any discussion. There was never any discussion with defense counsel about a stipulation as to what the evidence regarding the affair is, simply because I don't think there was a concrete answer. I think all the evidence shows, and the witnesses who did testify, testify that Ms. Stansel, the mother-in-law, testified that there was. She was not aware of any affair. So I think defense wanted to establish that there was an affair and that the ---- Against somebody who said there wasn't. Well, why shouldn't they be allowed to introduce evidence to that effect? And they did. And Your Honor is correct. Why can't they get the evidence from the people who know best the answer to that question? And I do agree with that, Your Honor. And I would say, again, the charge in this case was simply possession of the weapon. Maybe you should tell us why, if there was an error, it was harmless. It was harmless because, number one, again, the defendant had the opportunity to present this defense to the jury. He brought in ---- he testified, he took the stand, he made an argument. The jury was able to fully consider this argument. They were also able to listen to other witnesses, including Mr. Nava, Mr. Stersl, Colleen Wagner, each which corroborated parts of his story. And the government didn't rebut that. Well, Mr. Sturtz, we hear from defense counsel, was Melissa's friend, not defendant's friend. So if, in fact, he was Melissa's friend, wouldn't Melissa's motivation be relevant to whether the jury should believe what he has to say? I think, to be clear, that's Mr. Stersl, which was not Melissa Miller's friend. The reference was to Mr. Stoltz. Stoltz, sorry. Mr. Stoltz was not a witness that the defendant called in his case in chief. It was Mr. Stersl who had no relationship with Ms. Miller. And he corroborated testimony, allegedly, that Mr. Miller came to him and brought him the weapon and said, I want to get ---- I want to dispose of this. So it's harmless because, again, defendant had an opportunity to present this case in his theory to the jury. He was able to call witnesses to corroborate his story. They heard the story according to defendant's theory, and they were able to consider that. The government did not rebut that or put on evidence. It was unchallenged. And the jury was able to fully consider that and make a narrow determination that he possessed a machine gun and that he knew he possessed a machine gun. And I'd just like to talk briefly on how we knew or the evidence that established that he knew that it was a machine gun. It relied on testimony of witnesses who were not given any benefit by the government. It was Tina Lowenberg who defendant said he shouldn't have told her that he shouldn't have the machine gun. And I see that my time is up, and I'll just finish. Please conclude the question. It's an important issue. And we also relied on the testimony of Mr. Stoltz, who defendant said he knew it was a fully automatic machine gun. And finally, we also, and the special agent who testified that just by looking at the Chrome AK-47, you can tell that it was a machine gun just by looking at it. And who are we talking about here? We're talking about a 21-year combat Marine veteran who was a gun instructor, a sniper, a platoon sergeant who had experience with weapons, who looked at the machine gun, who a special agent said, if you could look at that machine gun, it was obvious from looking at it that it was a machine gun. Your Honor, the district court did not err in precluding the testimony because it was improper impeachment, and to the extent it wasn't, it was harmless error. Thank you. Thank you. Mr. Larkin. Thank you. I'd just like to make two quick points. The first is, as the government acknowledged, the test that this Court has set up for improper impeachment is whether it's for somebody to call somebody knowing that they're going to lie with the primary purpose of impeaching them. Here, there wasn't a primary purpose. There wasn't any purpose because, as the Court will see if it looks at the sealed excerpts of record, which are the grand jury statements and prior statements of Miller and Bruce, Mrs. Miller and Mr. Bruce, they admitted the affair. All he wanted to do was put them on the stand so the jury could hear that evidence, and that's what the government presented, prevented. And then with regard to harmlessness, the government says first that it was, you know, Mr. Miller's testimony was enough. Well, first of all, if the Court looks at pages 755 and 786 through 788 of the government's own closing argument, it said, you know, all you have in Mr. Miller's testimony, you know, you have no evidence supporting his story. So the government can't have it both ways. Was there any evidence at all that Melissa or Bruce suborned perjury from any of the testifying witnesses? There was evidence that they had contact with the witnesses during and prior to the investigation from which a jury could infer that. But, no, no direct testimony that they actually told somebody to lie. I see that I'm out of time. If you have something else you want to say in response to the point you were making, you can submit it. Thank you. Thank you. We thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Singleton, Fisher, Clifton